Polino and Pinto, P.C.
Joseph M. Pinto, Esquire
Attorney Id. 012951977
720 E. Main Street, Suite 1C
Moorestown, New Jersey 08057
Telephone (856)727-1777
Email: jfpolino@prodigy.net
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VICTOR EMONYON, MELIDA EMONYON, h/w/, and MARVIN MENTOR on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>YREFY, L.L.C. AND YREFY SLP5, L.L.C.<br><br>Defendants. | Civil Action No. 1:25-cv-04586 (RMB)(AMD)<br><br>*Electronically Filed*<br><br>Returnable: May 4, 2026 |

## FIRST AMENDED COMPLAINT

## Parties

The plaintiffs, Victor Emonyon and Melida Emonyon, residing at 37 Concord Place, Union, New Jersey and Marvin Mentor, residing at 9 Lewis Lane, Sparta, New Jersey, by way of complaint against the defendants, YREFY, L.L.C. and YREFY SLP5 L.L.C. with offices at 6910 E. Chauncey Lane, Suite 105, Phoenix, Arizona, 85054 says:

## Count I

1. Plaintiffs are residents of the State of New Jersey and applied for a loan from the defendants to refinance a U.S. Department of Education student loan. Marvin Mentor is the son of Victor and Melida Emonyon.

2. Defendant, YREFY, L.L.C., was formed in Arizona on June 13, 2018 and defendant YREFY SLP5 L.L.C. was formed on December 10, 2020 in Delaware and registered as a foreign entity in Arizona on January 7, 2021. They are not registered to do business in the State of New Jersey.

3. On or about June 24, 2024, plaintiff, Victor Emonyon, after reviewing the website of the defendants called the number provided and spoke to a representative of the defendants concerning refinancing certain student loans. After providing financial information to defendants, plaintiff received a letter from them acknowledging the conversation, setting forth certain benefits to the plaintiff of its program and advising he was pre-qualified to refinance the student loans using the estimated totals provided.

4. The letter stated that in order to continue with the offer of the credit and determine the APR, defendants had to confirm all loan details and collect information for the

application and promissory note. The principal balance was estimated at one hundred, twenty-nine thousand ($129,000.00) dollars, which was from a combination of three (3) student loans. The estimated monthly payment was nine hundred eight dollars and forty-three ($908.43) cents per month for two hundred forty (240) months at 5.19% interest.

5. Defendants sent by email a document entitled "Private Education Refinance Loan Application and Promissory Note" to plaintiff parents, who electronically signed them on September 26, 20204 (Victor) and on September 20, 2024 (Melida).

6. Only one (1) loan amount was listed with the application in the sum of seventy-five thousand ($75,000.00) dollars. The application referenced the loan holder/servicer as Navient, a servicer for the U.S. Department of Education.

7. On October 1, 2024, plaintiffs were sent an email from defendant's representative, Kendra Covedale, congratulating them on their preapproval and to set up monthly payments of six hundred twenty-five dollars and seventy-seven ($625.77) cents. However, plaintiffs were advised that they had to make two (2) monthly escrow payments to the defendants before they could call Navient and pay them off. Plaintiffs were advised to make the first payment in October since it anticipated plaintiffs would default on the Department of Education loan shortly. Once the second payment was made, defendants would contact Navient to start the payoff process. Plaintiffs were to call defendants with a bank routing and account number so payments could be directly debited from their account.

8. On or about November 18, 2024, plaintiff, Victor Emonyon, received a letter from the defendants responding to his request for information and clarification on the escrow payments and policy. The letter advised plaintiff that he was pre-qualified for a YREFY

Refinance of one (1) Navient education loan; the loan application would be reviewed by the loan committee to determine eligibility, final approval would occur when defendants received validation of all documents and the required escrow payments and reached an agreement with the loan holder. At the time of refinancing, plaintiff would receive a final disclosure outlining the new loans terms and conditions which included a three (3) day rescission period. After the three (3) days, defendants would take receipt of this loan from Navient and set up a payment account. At that time, plaintiff would be officially approved and the escrow payments would be applied to the principal balance of the new YREFY loan.

9. The defendants sent a document to the plaintiff, Victor Emonyon, dated December 23, 2024 (listing Melida Emonyon and Marvin Mentor as co-borrowers), entitled "Final Disclosure" which plaintiff, Victor Emonyon, electronically signed and returned, which stated the total loan amount was seventy-one thousand, nine hundred, thirty-nine dollars and four ($71,939.04) cents, interest to be based on at an annual percentage rate of 4.42%, with finance charges of twenty-four thousand, five hundred, eighty-seven dollars and fifty-seven ($24,587.57) cents, with total payments over the thirteen (13) years of the loan of one hundred thousand, one hundred, twenty-three dollars and fifty-seven ($100,123.57) cents and an origination fee of three thousand, five hundred, ninety -six dollars and ninety -five ($3,596.95) cents. The documents stated the creditor was YREFY SLP5, L.L.C. and/or an affiliate. The plaintiffs were instructed to sign and return the document to defendants by December 27, 2024 or defendants would be required to obtain an updated payoff letter from the U.S. Department of Education, which would delay the refinance. The document stated it was an offer which would be deemed accepted when electronically signed and returned. Acceptance

was described as occurring three (3) business days from the date of the Plaintiffs' signature. No promissory note or rescission forms were provided or attached. The disclosure mentions that defendants YREFY, L.L.C. will pay off the loan, at a discount from the full amount due to the prior lender but YREFY, L.L.C. was legally entitled to seek and to be paid by you for all amounts due and owning on the loan(s). Co-borrower Marvin Mentor received the same form dated December 23, 2024 listing only plaintiff, Victor Emonyon, as the borrower. Victor Emonyon and Marvin Mentor electronically signed their respective forms December 23, 2024. Plaintiffs have no record of a disclosure form being sent to or signed by Melida Emonyon.

10. Defendants never advised plaintiffs that they had negotiated a compromise with the U.S. Department of Education, reducing the amount of the loan from seventy-one thousand, nine hundred, thirty-nine dollars and four ($71,939.04) cents to twenty-eight thousand, two hundred ($28,200.00) dollars which would constitute payment in full if the sum of twenty-eight thousand, two hundred ($28,200.00) dollars was paid by December 31, 2024.

11. Plaintiff, Victor Emonyon, had permitted the defendants to deduct from his bank account by direct debit the said escrow payments of six hundred, twenty-five dollars and seventy-seven ($625.77) cents in October, November and December 2024 (October - $625.77, November -$625.77, and December - $312.89). Plaintiff also paid three hundred, twelve dollars and eighty-nine ($312.89) cents on January 11, 2025 and three hundred twelve dollars and eighty-nine ($312.89) cents on January 25, 2025 on the loan.

12. Plaintiff, Victor Emonyon, then received a notice from a credit card company stating that his credit score had been lowered and his credit limit was reduced to three hundred ($300.00) dollars. Wells Fargo and Pen Fed cancelled his credit cards.

13. When plaintiff, Victor Emonyon, called to determined why, he was advised that his credit report reflected there had been a charge off of his student loan.

14. Plaintiff, Victor Emonyon, then called Navient who advised the account had been charged off and settled for the sum of twenty-eight thousand, two hundred ($28,200.00) dollars.

15. This was the first time that any plaintiff was made aware that the student loan account had been compromised. Plaintiff, Victor Emonyon, asked Navient for proof of this and Navient sent him a letter, which he had never received, dated December 11, 2024 stating that they were offering to settle the debt for twenty-eight thousand, two hundred ($28,200.00) dollars, if it was paid by December 31, 2024. Navient also stated plaintiff should talk to the new servicer MOHELA (Higher Education Loan Authority of the State of Missouri) about what had taken place.

16. After speaking with MOHELA, it sent a letter to plaintiffs, Victor and Melida Emonyon, dated February 8, 2025, stating that the final payment on the student loan had been made on December 31, 2024 as part of a settlement agreement. No amount was set forth.

17. Plaintiff, Victor Emonyon, called the defendants to cancel the loan but defendants sent a letter dated February 10, 2025 to plaintiffs, Victor Emonyon and Marvin Mentor, stating it probably couldn't be cancelled since the loan had been funded.

18. In the same letter, while admitting they had negotiated a lower payoff of the student loan, defendants claimed as to the excess "we use this money to secure the 5.19%, signed note that we are providing you. The going rate in today's market is 7%-9% for people

with good credit. You are getting a rate well below this, that is how we get that rate. We have to secure financing, and we use the settlement difference to buy those rates."

19. On February 20, 2025, defendants sent an email to plaintiff, Victor Emonyon, that by now he should have received a notice from Navient stating there was no longer any balance owed on the loan the defendants had refinanced. They also claimed there was a three (3) day rescission period on the final disclosure which had passed, that he couldn't rescind and that the promissory note and disclosure statement stated he was responsible for the full debt.

20. Additional emails followed. On February 25, 2025, defendants sent plaintiff, Victor Emonyon, an email stating among other things that it was explained to him that the loan with the Department of Education carried 16% interest. The loan had a balance near the end of September of over seventy thousand ($70,000.00) dollars and defendants were able to refinance that loan and provide a fixed rate of interest at 4.42% with a minimum monthly payment of only six hundred, twenty-five dollars and seventy-seven ($625.77) cents. It also explained again why it was entitled to the full not the compromised amount of the student loan.

21. Extension of credit to a consumer are transactions is covered by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., which prohibits unconscionable commercial practices in connection with the sale or advertisement of any merchandise or real estate.

22. The defendants engaged in unconscionable commercial practices in the provision of the refinancing of plaintiffs' student loan which included without limitation:

A) The defendants did not receive an assignment of the student loan. Rather without notifying the plaintiffs, the defendants compromised the student loan and treated the

loan to the plaintiff as if the full balance of the student loan, seventy-one thousand, nine hundred, thirty-nine dollars and four ($71,939.04) cents, were still due.

B) Since the balance of the student loan was only twenty-eight thousand, two hundred ($28,200.00) dollars, any amounts included in the refinancing transaction exceeding this amount were not payment of the student loan or a refinancing of the student loan but constituted illegal fees, hidden usurious interest and unlawful and unconscionable costs.

C) The defendants misrepresented the balance of the amount due, and knowingly omitted to notify plaintiffs that the (1) loan has been compromised and (2) the part of the loan forgiven by the U.S. Department of Education could be considered income to them.

D) In effect the defendants were financing these illegal fees, costs and interest over a thirteen (13) year period. Plaintiffs were paying over the life of the loan illegal principal of forty-three thousand, seven hundred, thirty-nine dollars and four ($43,739.04) cents ($71,939.04-$28,200.00) plus interest at 4.2% on this illegal sum which over thirteen (13) years totals approximately thirteen thousand, ninety-six dollars, and sixty-four ($13,096.64) cents for a total of fifty-six thousand, six hundred, thirty-five dollars and sixty-eight ($56,635.68) cents.

E) Defendants misrepresented to the plaintiffs that there was interest at the rate of 16% accruing on their student loans.

F) The defendants are required to have certain licenses in the State of New Jersey in order to engage in the transaction which is the subject matter of this case, specifically the NJ Consumer Finance Licensing Act, N.J.S.A. 17:11c-1 et seq., the New Jersey Debt

Adjustment and Credit Counseling Act, N.J.S.A. 17:16G-1 et seq. and the New Jersey Money Transmitters Act, N.J.S.A. 17:15C-1 et seq. Failure to obtain these licenses under New Jersey State law are unconscionable commercial practices, crimes, and misrepresents to a consumer the authority of the defendants to enter into the transactions with the plaintiffs.

23. These predatory lending practices are not permitted under the N.J.C.F.A. They are just a newly packaged form of fraud exploiting the vulnerable and unsophisticated consumer.

24. A loan of twenty-eight thousand, two hundred ($28,200.00) dollars for thirteen (13) years at 4.2% would generate interest of eight thousand, four hundred, forty three dollars and eighty-three ($8,443.83) cents and total payments of thirty-six thousand, six hundred, forty-three dollars and eighty-three ($36,643.83) cents. Even if the interest rate was 9%, the interest generated would be nineteen thousand, seven hundred, thirty-seven dollars and twenty-three ($19,737.23) cents and total payments of forty-seven thousand, nine hundred, thirty-seven dollars and twenty-three ($47,937.23) cents.

25. In effect, to pay off a loan of twenty-eight thousand, two hundred ($28,200.00) dollars the plaintiffs, after paying eight thousand, four hundred, forty-three dollars and eighty-three ($8,443.83) cents in interest, are paying an additional sixty-three thousand, three hundred, fifty-six dollars and seventeen ($63,356.17) cents; ($100,000 - $36,346.83) is hidden interest and illegal fees and costs. This is the equivalent to paying 26.5 % interest on a loan of twenty-eight thousand, two hundred ($28,200.00) dollars over thirteen (13) years which exceeds the New Jersey usury rate.

26. Plaintiffs have suffered an ascertainable loss of money and property as a result, by the use and employment of the defendants of the unlawful methods, acts and practices described herein which are prohibited by the N.J.C.F.A. and are entitled to compensatory damages, treble damages, equitable relief, attorney fees, costs, and filing fees.

WHEREFORE, plaintiff demands judgement against the defendants:

A) Declaring that they do not owe the defendants the amounts which they claim;

B) Compensatory damages;

C) Treble damages;

D) Attorney fees, costs, filing fees, other reasonable costs of suit and pre-judgement interest;

E) Enjoining and restraining the defendants from attempting to collect any monies they claim are due and owing from the plaintiffs in this transaction;

F) Any other relief the court deems equitable and just under the circumstances.

<u>Count II</u>

27. Plaintiffs repeats the allegations of the first 26 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

28. The amounts which defendant seeks from plaintiffs, which exceeds the settlement amount of twenty-eight thousand, two hundred ($28,200.00) dollars with the U.S. Department of Education constitutes usurious hidden interest under the law.

29. Usury is the taking of or contracting for interest in excess of the maximum rate permitted by law for a loan or forbearance.

30. Under New Jersey law private written loans under fifty thousand ($50,000) dollars may carry a maximum interest rate of 16% per annum.

31. The actual interest rate on this loan to the plaintiff is approximately 26.5% per annum.

32. Under New Jersey law the defendants are not permitted to collect from plaintiff any interest on the loan transaction.

33. The plaintiffs at most, if they owe anything to defendants, owe the defendants the sum of twenty-eight thousand, two hundred ($28,200.00) dollars which will accrue without interest under the life of the loan.

WHEREFORE, plaintiff demands judgement:

A) Setting forth the amount that is due and owing by the plaintiffs to defendants with credits for amounts paid;

B) Declaring that any sums in excess of that amount claimed by the defendants are illegal usurious interest, void and not collectable;

C) For compensatory damages and punitive damages;

D) For costs, interest, attorney fees,

E) Any other relief the Court deems equitable and just under the circumstances.

## Count III

34. Plaintiffs repeat the allegations of the first 33 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

35. The defendants' contract with the plaintiff violates the New Jersey Truth in Consumer Contract, Warranty of Notice Act, N.J.S.A. 56:12-14 et seq. and the New Jersey Consumer Contract Plain Language Act, N.J.S.A. 56:12-1 et seq. in that:

A) It uses confusing language and confusing cross references;

B) It uses sentences that are of greater length than necessary;

C) It uses sentences and sections that are confusing and in illogical order;

D) It hides or buries important clauses in the contract in a manner to prevent the consumer from being aware of them;

E) It omits information from the contract necessary for the consumer to understand the nature of the transaction and manifest assent to it;

F) Is designed in bad faith to confuse the consumer;

G) It uses multiple confusing forms;

H) Other similar violations.

36. As a result thereof the plaintiffs suffered damages.

WHEREFORE, plaintiffs demand judgment for compensatory and punitive damages, attorney fees, costs, interest, voiding of the contract, reforming the contract and any other relief the Court deems equitable and just under the circumstances.

## Count IV

37. Plaintiffs repeat the allegations of the first 36 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

38. Defendants are in the business of compromising student loans and then lending money to the debtor to pay off the student loans.

39. Defendants as such are debt adjusters under the New Jersey Debt Adjusters and Credit Counseling Act, N.J.S.A. 17:16G-1.

40. The defendants in order to adjust debts for New Jersey residents are required to have a license issued by the Department of Banking and Insurance.

41. The defendants at the time of the transaction did not have a debt adjusters license nor could they have obtained one under New Jersey law since only non-profit entities qualify for such licenses.

42. Defendants are not exempt from the license requirement.

43. Failure to obtain such a license is a criminal offense under the laws of the State of New Jersey, N.J.S.A. 2C:21-9f.

44. Under N.J.S.A. 17:16G-8 any debtor injured by a violation of the Act may bring a civil action for damages.

45. As a result plaintiffs have suffered damages.

WHEREFORE, the plaintiffs demands judgment

A) For compensatory and punitive damages;

B) Costs, interest, and attorney fees;

C) Declaring the contract void and of no effect;

D) Enjoining and restraining the defendants from continued violation of the Act and other New Jersey laws;

E) Any other relief the Court deems equitable and just under the circumstances.

## Count V

46. Plaintiffs repeat the allegations of the first 45 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

47. The defendants by the aforesaid conduct breached the contract with the plaintiffs and breached the implied covenant of good faith and fair dealing found in every New Jersey contract.

48. As a result therefore the plaintiff have suffered damages.

WHEREFORE, plaintiffs demands judgment

A) For compensatory and punitive damages;

B) Costs, attorney fees, interest;

C) Declaring the contract void and of no effect;

D) Enjoining and restraining the defendants from conducting business in the State of New Jersey and violating New Jersey law;

E) For any other relief the Court deems equitable and just under the circumstances.

## Count VI

49. Plaintiffs repeat the allegations of the first 48 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

50. The representations of the defendants as set forth herein were knowingly false in fact when made and with the intent to defraud the plaintiffs including without out limitation that plaintiffs were refinancing the entire student loan when in fact the student loan was compromised to twenty-eight thousand, two hundred ($28,200.00) dollars.

51. Defendants deliberately omitted advising the plaintiff that the student loan had been compromised in order to induce him to enter in the refinancing transaction.

52. Plaintiffs relied on their misrepresentations and knowing omissions thereby being induced to enter the transaction.

53. By reason where of the plaintiffs have suffered damages.

WHEREFORE, plaintiffs demand judgment

A) For compensatory and punitive damages;

B) For attorney fees, costs and interest

C) For judgment voiding the contract;

D) For an Order enjoining and restraining defendants from conducting business in New Jersey;

E) For any other relief the Court deems equitable and just under the circumstances.

## Count VII

54 Plaintiffs repeat the allegations of the first 53 paragraphs of the Complaint and incorporates the same by reference as if set forth at length herein.

55. This action is brought by the plaintiffs on behalf of themselves and other New Jersey residents similarly situated whose student loans were compromised by defendants from

the full balance to a lesser amount and refinanced by the defendants for the full balance or an amount in excess of the compromised amount.

56. The defendants devised a fraudulent scheme to refinance student loans of the class by compromising the full balance of those loans and then, without advising the class plaintiffs of the compromised amount, refinancing the entire balance of the student loan although it was no longer due.

57. The numbers of the proposed class are so numerous that their joinder is impracticable and are known only to the defendants.

58. There are questions of law and fact common to each class.

59. The claims and defenses of the named plaintiffs are typical of the claims and defenses of the proposed class.

60. The plaintiffs are members of the proposed class and will fairly and adequately, protects the interests of the proposed class.

61. The defendants have acted and refused to act on grounds generally applicable to the class making final injunctive relief appropriate respecting the class as a whole and rendering class certification appropriate.

62. The common questions of law and fact that control the claims of the class predominate over individual questions rendering class certification appropriate.

63. The class device is a superior method of adjudicating the class members' claims as compared to other available methods for fairly and efficiently adjudicating this controversy. Class members are financially distressed persons who have no meaningful recourse against the

defendants absent collective pursuit of their monetary claims. The class plaintiffs are not even aware that they have been victimized by the defendants.

WHEREFORE, the plaintiffs demand judgment certifying the class as stated herein.

**Demand for Jury Trial**

Plaintiff demands a trial by jury pursuant to F.R.C.P 38.

POLINO AND PINTO, P.C.

By: /S/ JOSEPH M. PINTO
Joseph M. Pinto, Esquire
Attorney for Plaintiff

Date: 4/2/2026